IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| STEPHAN GRATZIANI, an individual, JORGE LUIS DE LA CONCEPCION, an individual, ALAN RODRIGUEZ, an individual, and WISHBONE MEDIA, LLC, a Florida limited liability company.<br><br>    Plaintiffs,<br><br>v.<br><br>AEROVANTI, INC., a Delaware for-profit corporation, AEROVANTI AVIATION, LLC, a Delaware limited liability company, AEROVANTI AIRCRAFT, LLC, a Delaware limited liability company, AEROVANTI CAPITAL, LLC, a Delaware limited liability company, AEROVANTI MAINTENANCE, LLC, a Delaware limited liability company, AEROVANTI HANGAR, LLC, a Maryland limited liability company, AEROVANTI HANGAR, LLC, a Florida limited liability company, AEROVANTI BROKERAGE, INC., a Florida for-profit corporation, TOMBSTONE HOLDINGS, LLC, a Delaware limited liability company, BENJAMIN RICKETTS, an individual, ROBERT DE POL, an individual, PATRICK TORMAY BRITTON-HARR, an individual.<br><br>    Defendants. | CASE NO.:  8:23-cv-01127 |

## VERIFIED COMPLAINT

Plaintiffs, STEPHAN GRATZIANI, an individual, JORGE LUIS DE LA CONCEPCION, an individual, ALAN RODRIGUEZ, an individual, and WISHBONE MEDIA, LLC, a Florida limited liability company (collectively, "Plaintiffs"), hereby sue Defendants, AEROVANTI, INC., a Delaware for-profit corporation, AEROVANTI AVIATION, LLC, a Delaware limited liability company, AEROVANTI AIRCRAFT, LLC, a Delaware limited liability company, AEROVANTI CAPITAL, LLC, a Delaware limited liability company, AEROVANTI MAINTENANCE, LLC, a Delaware limited liability company, AEROVANTI HANGAR, LLC, a Maryland limited liability company, AEROVANTI HANGAR, LLC, a Florida limited liability company, AEROVANTI BROKERAGE, INC., a Florida for-profit corporation, TOMBSTONE HOLDINGS, LLC, a Delaware limited liability company, BENJAMIN RICKETTS, an individual, ROBERT DE POL, an individual, and PATRICK TORMAY BRITTON-HARR, an individual (collectively "Defendants") and allege as follows:

## PARTIES

1. Plaintiff, Stephan Gratziani (hereinafter, "GRATZIANI"), is an individual, and is, and was at all relevant times hereto, a resident of Palm Beach County, Florida, and is otherwise *sui juris*.

2. Plaintiff, Alan Rodriguez (hereinafter, "RODRIGUEZ"), is an individual, and is, and was at all relevant times hereto, a resident of Miami-Dade County, Florida, and is otherwise *sui juris*.

3.    Plaintiff, Jorge Luis De La Concepcion (hereinafter, "CONCEPCION"), is an individual, and is, and was at all relevant times hereto, a resident of Miami-Dae County, Florida, and is otherwise *sui juris*.

4.    Plaintiff, Wishbone Media LLC (hereinafter, "WISHBONE MEDIA"), is, and was at all relevant times hereto, a Florida limited liability company, with its principal place of business located in Parkland, Florida.

5.    Defendant, AeroVanti, Inc. (hereinafter, "AEROVANTI"), is, and was at all relevant times hereto, a corporation organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401, and with its headquarters located in Sarasota, Florida.[1] Despite AEROVANTI having its principal place of business address located in Annapolis, Maryland, AEROVANTI is, and was at all times relevant hereto, not registered as a foreign corporation authorized to conduct business in the State of Maryland. In like manner, despite AEROVANTI being, and at all relevant times hereto having been, headquartered in the State of Florida, AEROVANTI is, and was at all times relevant hereto, not registered as a foreign corporation authorized to conduct business in the State of Florida.

6.    Defendant, AeroVanti Aviation, LLC (hereinafter, "AEROVANTI AVIATION"), is, and was at all relevant times hereto, a defunct limited liability company organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

---

[1] https://www.aerovanti.com/aerovanti-club-announces-up-to-100m-aircraft-funding-vehicle/

AEROVANTI AVIATION currently remains, and at all relevant times hereto having remained, administratively dissolved or otherwise not in good standing with the State of Delaware Division of Corporations.

7.      Defendant, AeroVanti Aircraft LLC (hereinafter, "AEROVANTI AIRCRAFT"), is, and was at all relevant times hereto, a limited liability company organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

8.      Defendant, AeroVanti Capital, LLC (hereinafter, "AEROVANTI CAPITAL"), is, and was at all relevant times hereto, a limited liability company organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

9.      Defendant, AeroVanti Maintenance, LLC (hereinafter, "AEROVANTI MAINTENANCE"), is, and was at all relevant times hereto, a limited liability company organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

10.     Defendant, AeroVanti Hangar, LLC (hereinafter, "AEROVANTI HANGAR-MD"), is, and was at all relevant times hereto, a limited liability company organized and existing under the laws of Maryland, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

11.     Defendant, AeroVanti Hangar, LLC (hereinafter, "AEROVANTI HANGAR-FL"), is, and was at all relevant times hereto, a limited liability company

organized and existing under the laws of Florida, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

12.     Defendant, AeroVanti Brokerage, Inc. (hereinafter, "AEROVANTI BROKERAGE"), is, and was at all relevant times hereto, a corporation organized and existing under the laws of Florida, with its principal place of business address located at 8191 N. Tamiami Trail, Suite 104, Sarasota, Florida 34243.

13.     Defendant, Tombstone Holdings, LLC d/b/a Tombstone Holdings, Inc. and/or Tombstone Holdings, LLC (collectively hereinafter, "TOMBSTONE HOLDINGS"), is, and was at all relevant times hereto, a corporation organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

14.     Defendant, Patrick Tormay Britton-Harr (hereinafter, "BRITTON-HARR"), is an individual, and is, and was at all relevant times hereto, a founding member, corporate officer, director, and/or principal of: AEROVANTI; AEROVANTI AVIATION; AEROVANTI AIRCRAFT; AEROVANTI CAPITAL; AEROVANTI MAINTENANCE; AEROVANTI HANGAR-MD; AEROVANTI HANGAR-FL; AEROVANTI BROKERAGE; and TOMBSTONE HOLDINGS, and is, upon information and belief, a resident of Sarasota County, Florida, and is otherwise *sui juris*.

15.     Defendant, Robert De Pol (hereinafter, "DE POL"), is an individual, and is, and was at all relevant times hereto, a corporate officer, director, and/or principal of: AEROVANTI; AEROVANTI AVIATION; AEROVANTI AIRCRAFT; AEROVANTI

CAPITAL; AEROVANTI MAINTENANCE; AEROVANTI HANGAR-MD; AEROVANTI HANGAR-FL; and AEROVANTI BROKERAGE, and is, upon information and belief, a resident of Manatee County, Florida, and is otherwise *sui juris*.

16.  Defendant, Benjamin Ricketts (hereinafter, "RICKETTS"), is an individual, and is, and was at all relevant times hereto, a corporate officer, director, and/or principal of: AEROVANTI; AEROVANTI AVIATION; AEROVANTI AIRCRAFT; AEROVANTI CAPITAL; AEROVANTI MAINTENANCE; AEROVANTI HANGAR-MD; AEROVANTI HANGAR-FL; and AEROVANTI BROKERAGE, and is, upon information and belief, a resident of Miami-Dade County, Florida, and is otherwise *sui juris*.

17.  Defendants, AEROVANTI AVIATION, AEROVANTI AIRCRAFT, AEROVANTI CAPITAL, AEROVANTI MAINTENANCE, AEROVANTI HANGAR-MD, AEROVANTI HANGAR-FL, AEROVANTI BROKERAGE, and TOMBSTONE HOLDINGS are sometimes collectively referred to herein as the "ALTER-EGO DEFENDANTS".

**JURISDICTION AND VENUE**

18.  This Court has general and specific jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), (b) and (c), as Defendants operated, conducted, engaged in, or carried on a business or business venture(s) in this District; engaged in substantial and not isolated business activities in this District; and committed tortious acts within this District, each tortious act being specifically alleged herein.

20.     All conditions precedent to this filing of this suit have been performed or have occurred.

## **GENERAL ALLEGATIONS**

21.     This action is the result of a calculated and continuing scheme undertaken by Defendant, BRITTON-HARR, and his network of affiliated companies to sell private aviation memberships and otherwise defraud unsuspecting members out of their money.

22.     Defendant, BRITTON-HARR, through Defendant, AEROVANTI, and its network of sham companies/ALTER-EGO DEFENDANTS, advertise and promote private aviation membership(s) under the guise of a tiered membership-based platform.

23.     Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, solicit potential new members to purchase an individual, family, corporate, or "top gun" membership to "AeroVanti's Elite Air Club".

24.    In their representations to potential new members, including Plaintiffs, Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, typically embellish the business stature of Defendant, AEROVANTI, by exaggerating the rapid growth of new members, the number of aircrafts in its "fleet", and the significant amount of investor led funding received to support expansion and allow Defendant, AEROVANTI, to rapidly scale in order to meet customer demand. [2]

25.    Notably, in their representations to potential new members, including Plaintiffs, Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, promoted and advertised that more than one hundred million dollars ($100,000,000.00)(inclusive of a Series A) was raised for the purpose of allowing a "significant fleet expansion" in order to "keep its member-to-aircraft ratio lower than the industry average without sacrificing any of the luxury one expects with private travel". [3]

26.    New members, including Plaintiffs, relied on the representations made by Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, in purchasing an individual, family, corporate, or "top gun" membership in AeroVanti's Elite Air Club, only to then

---

[2]    https://www.aerovanti.com/aerovanti-names-former-piaggio-america-chief-executive-paolo-ferreri-as-interim-coo/) (March 2, 2023).

[3]    https://www.aerovanti.com/aerovanti-club-announces-up-to-100m-aircraft-funding-vehicle/

discover that the representations made to new members, including Plaintiffs, were nothing more than a mirage.

27.    To that end, despite representations by Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS to the contrary, the significant number of aircrafts being maintained in the "fleet" of Defendant, AEROVANTI, was actually comprised of no more than three (3) aircrafts deemed to be airworthy.

28.    Moreover, Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, further advertised and promoted the "top gun" membership as being a limited AeroVanti Elite Air Club membership ("*Top Gun Membership*").

29.    Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, represented to potential new members, including Plaintiffs, that each respective "Top Gun" Membership was to be comprised of twenty (20) individual membership units, at one hundred fifty thousand dollars ($150,000.00) per membership unit, for a total "Top Gun" Membership program amount of three million dollars ($3,000,000.00).

30.    Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, further represented to potential new members, including Plaintiffs, that upon receipt of the total "Top Gun" Membership amount of three million dollars ($3,000,000.00), the funds would be used for the express and limited purposes of acquiring and reconditioning a specified Piaggio P.

180 Avanti Aircraft for use by the membership unitholders of each respective "Top Gun" Membership.

31. Conversely, upon purchasing a "Top Gun" Membership in reliance on the representations by Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, new members, including Plaintiffs, soon discovered that the "host of benefits" associated with the "Top Gun" Membership were too an illusion.

32. To that end, despite Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, having received a total of fifteen million dollars ($15,000,000.00) from the individual membership unitholders that comprised the five (5) known "Top Gun" Memberships, the vast majority, if not all, of the funds received were used for an improper purpose at the direction of Defendant, BRITTON-HARR.

33. Upon information and belief, as a result of the funds received having been used for an improper purpose at the direction of Defendant, BRITTON-HARR, all five (5) of the specified Piaggio P. 180 Avanti Aircrafts designated for the five (5) known "Top Gun" Memberships, have either since been repossessed or deemed not to be airworthy and in total disrepair.

34. However, despite having defrauded hundreds of members, and further refusing to refund members the previously tendered membership fee, Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, continue to expend member funds on partnership deals with

professional sports organizations and on sponsorships for professional sporting events, all in an effort to further embellish the business stature and company health of Defendant, AEROVANTI, and by way of gross misrepresentations, lure unsuspecting new members to purchase memberships in furtherance of the calculated and continuing scheme by Defendant, AEROVANTI.

35.    Prior to instituting this action and based on the discovery of the fraudulent misrepresentations made on behalf of Defendant, AEROVANTI, its agents and network of sham companies/ALTER-EGO DEFENDANTS, Plaintiffs requested for a rescission of their respective AeroVanti Membership Agreements and return of the amounts previously tendered by Plaintiffs in connection therewith, to no avail.

36.    All conditions precedent to the filing and maintenance of the causes of actions asserted herein have occurred, have been waived, or have been discharged or otherwise satisfied.

37.    PLAINTIFFS have retained the undersigned firm of the WLG Firm, PLLC and have incurred attorneys' fees and costs for which they are entitled to be reimbursed from Defendants as provided by Florida Statutes and Florida case law.

## COUNT I - PIERCING THE CORPORATE VEIL[4]
### (PLAINTIFFS AGAINST ALTER-EGO DEFENDANTS)

Plaintiffs seek a declaratory judgment determining that Defendants, AEROVANTI AVIATION, AEROVANTI AIRCRAFT, AEROVANTI CAPITAL, AEROVANTI MAINTENANCE, AEROVANTI HANGAR-MD, AEROVANTI

---

[4] *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1117 (Fla. 1984).

HANGAR-FL, AEROVANTI BROKERAGE, and TOMBSTONE HOLDINGS (collectively, the "ALTER-EGO DEFENDANTS") are the alter-ego of Defendant, AEROVANTI, and allege that:

38.    Plaintiffs re-allege and incorporate by reference paragraphs 1-38 as if fully set forth herein.

39.    Upon information and belief, Defendant, BRITTON-HARR, has developed an intricate web of deceit through the creation of interrelated entities that are each alter egos of one another.

40.    Upon information and belief, Defendant, BRITTON-HARR, uses the ALTER-EGO DEFENDANTS to insulate both Defendant, AEROVANTI, and Defendant, BRITTON-HARR, from any such liability.

41.    Upon information and belief, Defendant, BRITTON-HARR, owns, operates, dominates, and controls the ALTER-EGO DEFENDANTS to such an extent that they have no corporate existence independent of Defendant, AEROVANTI, and Defendant, BRITTON-HARR, their alter-ego.

42.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS have common ownership, as Defendant, BRITTON-HARR, solely owns or maintains an ownership interest in Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS.

43.    At all times relevant hereto, Defendant, BRITTON-HARR, caused the incorporation and/or formation of Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS, as Defendant, BRITTON-HARR, is the authorized signatory on all

of the state filings for Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS.

44.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS have common directors or officers, as Defendant, BRITTON-HARR, is a corporate officer, director, and/or principal of Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS.

45.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS share principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

46.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS share the same email address domain of "@aerovanti.com".

47.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS share the same website domain of "www.aerovanti.com".

48.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS share the same company logo, which depicts a golden goose with company name "AEROVANTI" underneath.

49.    At all times relevant hereto, the daily business operations of Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS are not kept separate.

50.    At all times material hereto, the ALTER-EGO DEFENDANTS do not observe corporate formalities such as keeping separate books and records, holding shareholder meetings).

51.    At all times relevant hereto, there is a lack of any independent business derived from the ALTER-EGO DEFENDANTS except that of which is inextricably intertwined with or handed down from Defendant, AEROVANTI, and/or Defendant, BRITTON HARR.

52.    At all times relevant hereto, funds and assets are commingled between Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS.

53.    As set forth herein, Defendant, BRITTON-HARR, operates, dominates, and controls Defendant, AEROVANTI, and each of the ALTER-EGO DEFENDANTS as a single business entity to such an extent that the ALTER-EGO DEFENDANTS' existence was in effect, non-existent.

54.    Defendant, BRITTON-HARR, as set forth herein, used the corporate form of the ALTER-EGO DEFENDANTS for an improper purpose and as mere devices to engage in improper conduct to obtain a financial benefit to the detriment of Plaintiffs.

55.    Moreover, upon information and belief, the ALTER-EGO DEFENDANTS, individually, likely do not maintain sufficient assets to pay any such monetary judgment award in favor of Plaintiffs.

56.    All things considered, allowing the corporate form of the ALTER-EGO DEFENDANTS to insulate Defendant, BRITTON-HARR, and Defendant, AEROVANTI, in any way from liability would sanction an injustice against Plaintiffs.

**WHEREFORE**, Plaintiffs, demand a declaratory judgment that the ALTER-EGO DEFENDANTS  are alter-egos of Defendant, AEROVANTI, and Defendant,

BRITTON-HARR, respectively, and therefore declare the ALTER-EGO DEFENDANTS, Defendant, AEROVANTI, and Defendant, BRITTON-HARR, jointly and severally liable for any such monetary judgment awarded against the ALTER-EGO DEFENDANTS, Defendant, AEROVANTI, and Defendant, BRITTON-HARR and in favor of Plaintiffs, for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

### COUNT II - BREACH OF CONTRACT[5]
### (GRATZIANI against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, GRATZIANI, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, and alleges that:

57. This is an action for damages that are within the jurisdiction of this Court.

58. Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

59. On August 15, 2022, Plaintiff, GRATZIANI, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Membership Agreement and corresponding Top Gun Addendum to the AeroVanti Membership Agreement (collectively hereinafter, "*AeroVanti Gratziani Top Gun Agreement*"); a copy of the AeroVanti Gratziani Top Gun Agreement is attached hereto as Exhibit "1".

60. On August 15, 2022, AeroVanti Gratziani Top Gun Agreement was executed by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

---

[5] *T.T. International Co., Ltd v. BMP Int', Inc.*, 2022 WL 971950, *10-11 (M.D. Fla. Mar. 31, 2022)

61.    Upon information and belief, and at all relevant times hereto, Defendant, AEROVANTI AVIATION, was a defunct limited liability company and was no longer in good standing with the State of Delaware Division of Corporations at the time the AeroVanti Gratziani Top Gun Agreement was executed on behalf of Defendant, AEROVANTI AVIATION, by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

62.    Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, each respective AeroVanti Elite Air Club "Top Gun" membership was to be comprised of twenty (20) individual membership units, at one hundred fifty thousand dollars ($150,000.00) per membership unit, for a total "Top Gun" membership program amount of two hundred fifty thousand dollars ($2,850,000.00).

63.    Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, once twenty (20) individual membership units were purchased in connection with the "Top Gun" membership, a "Top Gun" membership name was designated to each respective group comprised of twenty (20) individual membership unitholders.

64.    In the instant matter, Plaintiff, GRATZIANI, and in connection with the "Top Gun" Membership, purchased one (1) membership unit for one hundred fifty thousand ($150,000.00) and was designated to be a "Top Gun" membership unitholder of "N111VR LLC".

65. Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, and in consideration of Plaintiff, GRATZIANI, having agreed to purchase one (1) membership unit in the "Top Gun" Program, Defendant, AEROVANTI AVIATION, represented, and further agreed, that all funds obtained in connection with the "N111VR LLC" Top Gun Membership were to be held in an escrow account established on behalf of "N111VR LLC" for the purpose of maintaining and disbursing the respective funds of "N111VR LLC" in accordance with the express terms of the AeroVanti Gratziani Top Gun Agreement.

66. In connection with the "N111VR LLC" Top Gun Membership, and in accordance with the AeroVanti Gratziani Top Gun Agreement, a total of two hundred fifty thousand dollars ($2,850,000.00) was received by Defendant, AEROVANTI AVIATION, on behalf of "N111VR LLC" and placed in the escrow account of Gilchrist Aviation Law ("*Escrow Agent*") on or around August 25, 2022.

67. In order to induce Plaintiff, GRATZIANI, and other "N111VR LLC" members, into purchasing the respective membership unit(s) for the "N111VR LLC" Top Gun Membership, and pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, GRATZIANI, and further expressly agreed, to endorse in blank and deliver to the respective Escrow Agent, the aircraft title to the Aircraft, as specified herein.

68. Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, in the event that Defendant, AEROVANTI AVIATION, failed to comply with the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, then

upon request being made to the Escrow Agent by Plaintiff, GRATZIANI, and/or any other N111VR LLC members, the respective Escrow Agent, was required to deliver to Plaintiff, GRATZIANI, and/or any other "N111VR LLC" members, the respective title documentation for the Aircraft, as specified herein.

69.    Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, GRATZIANI, and further expressly agreed, that the funds being held in the respective escrow account on behalf of "N111VR LLC" were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1006, FAA Registration No. N111VR (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, GRATZIANI, and other "N111VR LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

70.    In connection with the AeroVanti Gratziani Top Gun Agreement, Defendant, AEROVANTI AVIATION, expressly agreed to enter into an aircraft lease and purchase agreement for the specified Aircraft.

71.    In connection with the AeroVanti Gratziani Top Gun Agreement, an Aircraft Lease Purchase Agreement was previously entered into for the specified Aircraft on November 4, 2021 between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT; the Aircraft Lease Purchase

Agreement was executed by Defendant, BRITTON-HARR, as "President" of ALTER-EGO DEFENDANT, AEROVANTI AIRCRAFT.

72.     Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, the funds being held in the respective escrow account on behalf of "N111VR LLC" were only to be disbursed to Defendant, AEROVANTI AVIATION, on an as-needed basis, upon the respective Escrow Agent's receipt of a written certification identifying certain expenses requiring payment that were strictly associated with either: (i) the acquisition and reconditioning of the Aircraft and the conformity process; and/or (ii) to pay for Plaintiff, GRATZIANI, and/or other "N111VR LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator.

73.     In connection with any such expenses directly associated with the flight(s) taken by Plaintiff, GRATZIANI, and/or other "N111VR LLC" members on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, and pursuant to the express terms and conditions of the AeroVanti Gratziani Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, GRATZIANI, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses requiring payment for such flight(s), which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the

respective escrow account on behalf of "N111VR LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

74.    In like manner, and in connection with any such expenses directly associated with the acquisition, reconditioning and Part 135 conformity of the Aircraft, and pursuant to the express terms and conditions of the AeroVanti Gratziani Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, GRATZIANI, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses that require payment as it directly relates to the acquisition, reconditioning and Part 135 conformity of the Aircraft, which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "N111VR LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

75.    Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, upon completion of the acquisition, reconditioning and Part 135 conformity of the Aircraft by Defendant, AEROVANTI AVIATION, any such funds remaining in the respective escrow account on behalf of "N111VR LLC" were to be disbursed to Defendant, AEROVANTI AVIATION.

76.    Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, no such amounts were to be disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of

"N111VR LLC" other than as expressly stated and agreed to in the AeroVanti Gratziani Top Gun Agreement.

77.    During the period of August 17, 2022, through and including September 15, 2022, a span of 29 calendar days, the total amount of two million eight hundred fifty thousand dollars ($2,850,000.00) that was being held in the respective escrow account on behalf of "N111VR LLC" was disbursed from the respective escrow account to Defendant, AEROVANTI AVIATION.

78.    During the period of August 17, 2022, through and including September 15, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" were used for the purpose of acquiring the respective Aircraft, as evidenced by no such lease payments having been made to DFTF LLC by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, as were required in accordance with the Aircraft Lease Purchase Agreement for the specified Aircraft.

79.    Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, GRATZIANI, to enter into the AeroVanti Gratziani Top Gun Agreement, the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO

DEFENDANTS having failed to make the required Aircraft lease payments in accordance thereof.

80.    Equally important, and upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by DFTF LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS.

81.    During the period of August 17, 2022, through and including September 15, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" were used for the purpose of reconditioning the respective Aircraft, as evidenced by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, failure to insure and properly maintain the specified Aircraft.

82.    Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, GRATZIANI, to enter into the AeroVanti Gratziani Top Gun Agreement, the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO

DEFENDANTS having failed to insure and properly maintain the specified Aircraft in accordance thereof.

83. During the period of August 17, 2022, through and including September 15, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" were used for the purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, GRATZIANI, and/or other N111VR LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, as evidenced by Plaintiff, GRATZIANI, nor any other "N111VR LLC" member, having taken any such flight(s) on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator during such time.

84. Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Gratziani Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "N111VR LLC" for the express purpose of acquiring the specified Aircraft.

85. Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Gratziani Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "N111VR LLC" for the express purpose of reconditioning the specified Aircraft in order to meet the "fleet" standards of Defendant, AEROVANTI, and further conform with Part 135 requirements.

86.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Gratziani Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "N111VR LLC" for the express purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, GRATZIANI, and/or other N111VR LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator.

87.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Gratziani Top Gun Agreement by further failing to insure and maintain the specified Aircraft as required by Part 135.

88.    Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, as a result of Defendant, AEROVANTI AVIATION, having failed to comply with the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, Plaintiff, GRATZIANI, made a written request to the Escrow Agent to deliver to Plaintiff, GRATZIANI, the respective aircraft title documentation for the specified Aircraft, to no avail.

89.    Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, materially breached the AeroVanti Gratziani Top Gun Agreement by failing to deliver to the Escrow Agent, the respective aircraft title documentation for the specified Aircraft, as evidenced by no such title documentation for the specified Aircraft ever having been delivered to Escrow Agent.

90. Moreover, Plaintiff, GRATZIANI, previously sent Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, a Notice of Incurable Default and Formal Demand Letter on April 20, 2023, to no avail; a copy of the Formal Demand Letter is attached hereto as Exhibit "6".

91. As a direct and proximate result of Defendant, AEROVANTI AVIATION, and Defendant, BRITTON-HARR, having materially breached the AeroVanti Gratziani Top Gun Agreement beyond the point of any such ability to cure, Plaintiff, GRATZIANI, has suffered damages, and continues to suffer damages.

92. Moreover, due to Defendant, BRITTON-HARR, operating Defendant, AEROVANTI AVIATION, Defendant, AEROVANTI AIRCRAFT, Defendant, AEROVANTI, and each of the ALTER-EGO DEFENDANTS as a single business entity Plaintiff, GRATZIANI, asserts this claim against all the Alter Ego Defendants.

**WHEREFORE**, Plaintiff, GRATZIANI, LLC, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT III - FRAUDULENT MISREPRESENTATION[6]

### (GRATZIANI against AEROVANTI,
### ALTER-EGO DEFENDANTS and BRITTON-HARR)

Plaintiff, GRATZIANI, sues Defendants, AEROVANTI, the ALTER-EGO DEFENDANTS, and BRITTON-HARR, jointly and severally, and alleges that:

93. This is an action for damages that are within the jurisdiction of this court.

94. Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

95. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further advertised and promoted the "top gun" membership as being a limited AeroVanti Elite Air Club membership ("*Top Gun Membership*").

96. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained in connection with the "N111VR LLC" "Top Gun" Membership were to be held in an escrow account established on behalf of "N111VR LLC" for the purpose of maintaining and disbursing the respective funds of "N111VR LLC" in accordance with the express terms of the AeroVanti Gratziani Top Gun Agreement.

97. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that the funds being held in the respective escrow account on behalf of "N111VR LLC" were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180

---

[6] *Metropolitan Life Ins. Co. v. Liebowitz*, 2022 WL 833635, *9 (M.D. Fla. Mar. 21, 2022);

Avanti Aircraft, SN 1006, FAA Registration No. N111VR (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, GRATZIANI, and other "N111VR LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

98.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Aircraft Lease Purchase Agreement was previously entered into for the specified Aircraft on November 4, 2021, between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

99.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Gratziani Membership Agreement.

100.    Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Gratziani Membership Agreement.

101.    The representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiff.

102.   Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Gratziani Top Gun Agreement.

103.   The false and fraudulent representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS were material to Plaintiff's decision to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Gratziani Membership Agreement.

104.   If  Plaintiff had known that the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Gratziani Membership Agreement.

105.   As a direct and proximate result of the false and fraudulent representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff, GRATZIANI, has suffered damages, and continues to suffer damages.

**WHEREFORE**, Plaintiff, GRATZIANI, LLC, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT IV - RESCISSION[7]

### (GRATZIANI against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, GRATZIANI, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, and alleges that:

106.   This is an action for damages that are within the jurisdiction of this court.

107.   Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

108.   On August 25, 2022, Plaintiff, GRATZIANI, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Gratziani Top Gun Agreement"); a copy of the AeroVanti Gratziani Top Gun Agreement is attached hereto as Exhibit "1".

109.   Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained for the "Top Gun" Membership were to be held in an escrow account established on behalf of "N111VR LLC" and were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1006, FAA Registration No. N111VR (the *Aircraft*") in order to meet the fleet standards of

---

[7]  *Perna v. Am. Campus Cmtys, Inc.*, 2022 WL 1689083, *3-5 (M.D. Fla. May 26, 2022);

Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, GRATZIANI, and other "N111VR LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

110.   Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Aircraft Lease Purchase Agreement was previously entered into for the specified Aircraft on November 4, 2021, between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

111.   Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Gratziani Membership Agreement.

112.  Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Gratziani Membership Agreement.

113.   Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through

its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Gratziani Top Gun Agreement.

114.   If  Plaintiff had known that the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Gratziani Membership Agreement.

115.   Moreover, upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by DFTF LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR.

116.   As a result of Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, having made false and fraudulent statements to Plaintiff, and Plaintiff having justifiably relied thereon to Plaintiffs detriment, and further, due to the specified Aircraft no longer being in the leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS,

and/or Defendant, BRITTON-HARR, whereby making both the purpose of Plaintiff's funds, as well as Plaintiff's actual ability to use the specified Aircraft impossible.

117. Upon discovering the acts of fraud, deceit and/or omissions by AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff sought to rescind the AeroVanti Gratziani Membership Agreement.

118. In doing so, Plaintiff notified Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR of such rescission and requested the return of the funds delivered to Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR in connection with the AeroVanti Gratziani Membership Agreement.

119. However, Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR have failed and further refused to return the monies it received from Plaintiff in connection with the AeroVanti Gratziani Membership Agreement.

120. Plaintiff has no adequate legal remedy at law except for a rescission of the AeroVanti Gratziani Membership Agreement.

**WHEREFORE**, Plaintiff, GRATZIANI, LLC, respectfully demands a judicial declaration by this Honorable Court in its favor and against Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, for rescission of the AeroVanti Gratziani Top Gun Agreement *ab initio*, the return of the $150,000.00 previously paid by Plaintiff to AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, plus applicable interest on the

funds from August 25, 2022 through and including May 19, 2023, and to enter such other orders and/or grant such further relief as this Honorable Court deems just and proper under the circumstances.

## COUNT V - BREACH OF CONTRACT[8]

### (GRATZIANI against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, GRATZIANI, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, and alleges that:

121.    This is an action for damages that are within the jurisdiction of this court.

122.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

123.    On August 25, 2022, Plaintiff, GRATZIANI, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Membership Agreement and corresponding Top Gun Addendum to the AeroVanti Membership Agreement (collectively hereinafter, "*AeroVanti Gratziani Top Gun Agreement*"); a copy of the AeroVanti Gratziani Top Gun Agreement is attached hereto as Exhibit "2".

124.    On August 25, 2022, AeroVanti Gratziani Top Gun Agreement was executed by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

125.    Upon information and belief, and at all relevant times hereto, Defendant, AEROVANTI AVIATION, was a defunct limited liability company and was no longer

---

[8] *T.T. International Co., Ltd v. BMP Int', Inc.*, 2022 WL 971950, *10-11 (M.D. Fla. Mar. 31, 2022)

in good standing with the State of Delaware Division of Corporations at the time the AeroVanti Gratziani Top Gun Agreement was executed on behalf of Defendant, AEROVANTI AVIATION, by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

126.   Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, each respective AeroVanti Elite Air Club "Top Gun" membership was to be comprised of twenty (20) individual membership units, at one hundred fifty thousand dollars ($150,000.00) per membership unit, for a total "Top Gun" membership program amount of two hundred fifty thousand dollars ($2,850,000.00).

127.   Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, once twenty (20) individual membership units were purchased in connection with the "Top Gun" membership, a "Top Gun" membership name was designated to each respective group comprised of twenty (20) individual membership unitholders.

128.   In the instant matter, Plaintiff, GRATZIANI, and in connection with the "Top Gun" Membership, purchased one (1) membership unit for one hundred fifty thousand ($150,000.00) and was designated to be a "Top Gun" membership unitholder of "N111VR LLC".

129.   Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, and in consideration of Plaintiff, GRATZIANI, having agreed to purchase one (1) membership unit in the "Top Gun" Program, Defendant, AEROVANTI

AVIATION, represented, and further agreed, that all funds obtained in connection with the "N111VR LLC" Top Gun Membership were to be held in an escrow account established on behalf of "N111VR LLC" for the purpose of maintaining and disbursing the respective funds of "N111VR LLC" in accordance with the express terms of the AeroVanti Gratziani Top Gun Agreement.

130.  In connection with the "N111VR LLC" Top Gun Membership, and in accordance with the AeroVanti Gratziani Top Gun Agreement, a total of two hundred fifty thousand dollars ($2,850,000.00) was received by Defendant, AEROVANTI AVIATION, on behalf of "N111VR LLC" and placed in the escrow account of Gilchrist Aviation Law ("*Escrow Agent*") on or around August 25, 2022.

131.  In order to induce Plaintiff, GRATZIANI, and other "N111VR LLC" members, into purchasing the respective membership unit(s) for the "N111VR LLC" Top Gun Membership, and pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, GRATZIANI, and further expressly agreed, to endorse in blank and deliver to the respective Escrow Agent, the aircraft title to the Aircraft, as specified herein.

132.  Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, in the event that Defendant, AEROVANTI AVIATION, failed to comply with the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, then upon request being made to the Escrow Agent by Plaintiff, GRATZIANI, and/or any other N111VR LLC members, the respective Escrow Agent, was required to deliver to

Plaintiff, GRATZIANI, and/or any other "N111VR LLC" members, the respective title documentation for the Aircraft, as specified herein.

133.    Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, GRATZIANI, and further expressly agreed, that the funds being held in the respective escrow account on behalf of "N111VR LLC" were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1006, FAA Registration No. N111VR (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, GRATZIANI, and other "N111VR LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

134.    In connection with the AeroVanti Gratziani Top Gun Agreement, Defendant, AEROVANTI AVIATION, expressly agreed to enter into an aircraft lease and purchase agreement for the specified Aircraft.

135.    In connection with the AeroVanti Gratziani Top Gun Agreement, an Aircraft Lease Purchase Agreement was previously entered into for the specified Aircraft on November 4, 2021, between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT; the Aircraft Lease Purchase Agreement was executed by Defendant, BRITTON-HARR, as "President" of ALTER-EGO DEFENDANT, AEROVANTI AIRCRAFT.

136.   Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, the funds being held in the respective escrow account on behalf of "N111VR LLC" were only to be disbursed to Defendant, AEROVANTI AVIATION, on an as-needed basis, upon the respective Escrow Agent's receipt of a written certification identifying certain expenses requiring payment that were strictly associated with either: (i) the acquisition and reconditioning of the Aircraft and the conformity process; and/or (ii) to pay for Plaintiff, GRATZIANI, and/or other "N111VR LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator.

137.   In connection with any such expenses directly associated with the flight(s) taken by Plaintiff, GRATZIANI, and/or other "N111VR LLC" members on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, and pursuant to the express terms and conditions of the AeroVanti Gratziani Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, GRATZIANI, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses requiring payment for such flight(s), which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "N111VR LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

138.  In like manner, and in connection with any such expenses directly associated with the acquisition, reconditioning and Part 135 conformity of the Aircraft, and pursuant to the express terms and conditions of the AeroVanti Gratziani Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, GRATZIANI, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses that require payment as it directly relates to the acquisition, reconditioning and Part 135 conformity of the Aircraft, which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "N111VR LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

139.  Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, upon completion of the acquisition, reconditioning and Part 135 conformity of the Aircraft by Defendant, AEROVANTI AVIATION, any such funds remaining in the respective escrow account on behalf of "N111VR LLC" were to be disbursed to Defendant, AEROVANTI AVIATION.

140.  Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, no such amounts were to be disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" other than as expressly stated and agreed to in the AeroVanti Gratziani Top Gun Agreement.

141.   Conversely, during the period of August 17, 2022, through and including September 15, 2022, a span of 29 calendar days, the total amount of two hundred fifty thousand dollars ($2,850,000.00) that was being held in the respective escrow account on behalf of "N111VR LLC" was disbursed from the respective escrow account to Defendant, AEROVANTI AVIATION.

142.   During the period of August 17, 2022, through and including September 15, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" were used for the purpose of acquiring the respective Aircraft, as evidenced by no such lease payments having been made to DFTF LLC by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, as were required in accordance with the Aircraft Lease Purchase Agreement for the specified Aircraft.

143.   Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, GRATZIANI, to enter into the AeroVanti Gratziani Top Gun Agreement, the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to make the required Aircraft lease payments in accordance thereof.

144.    Equally important, and upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by DFTF LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS.

145.    During the period of August 25, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" were used for the purpose of reconditioning the respective Aircraft, as evidenced by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, failure to insure and properly maintain the specified Aircraft.

146.    Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, GRATZIANI, to enter into the AeroVanti Gratziani Top Gun Agreement, the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to insure and properly maintain the specified Aircraft in accordance thereof.

147.   During the period of August 17, 2022, through and including September 15, 2022, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" were used for the purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, GRATZIANI, and/or other N111VR LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, as evidenced by Plaintiff, GRATZIANI, nor any other "N111VR LLC" member, having taken any such flight(s) on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator during such time.

148.   Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Gratziani Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "N111VR LLC" for the express purpose of acquiring the specified Aircraft.

149.   Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Gratziani Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "N111VR LLC" for the express purpose of reconditioning the specified Aircraft in order to meet the "fleet" standards of Defendant, AEROVANTI, and further conform with Part 135 requirements.

150.   Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Gratziani Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "N111VR LLC" for the express purpose of paying the

specified expenses directly associated with the flight(s) taken by Plaintiff, GRATZIANI, and/or other N111VR LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator.

151. Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Gratziani Top Gun Agreement by further failing to insure and maintain the specified Aircraft as required by Part 135.

152. Pursuant to the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, as a result of Defendant, AEROVANTI AVIATION, having failed to comply with the terms and conditions of the AeroVanti Gratziani Top Gun Agreement, Plaintiff, GRATZIANI, made a written request to the Escrow Agent to deliver to Plaintiff, GRATZIANI, the respective aircraft title documentation for the specified Aircraft, to no avail.

153. Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, materially breached the AeroVanti Gratziani Top Gun Agreement by failing to deliver to the Escrow Agent, the respective aircraft title documentation for the specified Aircraft, as evidenced by no such title documentation for the specified Aircraft ever having been delivered to Escrow Agent.

154. Moreover, Plaintiff, GRATZIANI, previously sent Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, a Notice of Incurable Default and Formal Demand Letter on April

20, 2023, to no avail; a copy of the Formal Demand Letter is attached hereto as Exhibit "6".

155.  As a direct and proximate result of Defendant, AEROVANTI AVIATION, and Defendant, BRITTON-HARR, having materially breached the AeroVanti Gratziani Top Gun Agreement beyond the point of any such ability to cure, Plaintiff, GRATZIANI, has suffered damages, and continues to suffer damages.

156.  Moreover, due to Defendant, BRITTON-HARR, operating Defendant, AEROVANTI AVIATION, Defendant, AEROVANTI AIRCRAFT, Defendant, AEROVANTI, and each of the ALTER-EGO DEFENDANTS as a single business entity Plaintiff, HARTMAN, asserts this claim against all the Alter Ego Defendants.

**WHEREFORE**, Plaintiff, ANDREW HUNTER GRATZIANI, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

### COUNT VI - FRAUDULENT MISREPRESENTATION[9]

### (GRATZIANI against AEROVANTI, ALTER-EGO DEFENDANTS and BRITTON-HARR)

Plaintiff, GRATZIANI, sues Defendants, AEROVANTI, the ALTER-EGO DEFENDANTS, and BRITTON-HARR, jointly and severally, and alleges that:

157.  This is an action for damages that are within the jurisdiction of this court.

---

[9] *Metropolitan Life Ins. Co. v. Liebowitz*, 2022 WL 833635, *9 (M.D. Fla. Mar. 21, 2022);

158. Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

159. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further advertised and promoted the "top gun" membership as being a limited AeroVanti Elite Air Club membership ("*Top Gun Membership*").

160. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained in connection with the "N111VR LLC" "Top Gun" Membership were to be held in an escrow account established on behalf of "N111VR LLC" for the purpose of maintaining and disbursing the respective funds of "N111VR LLC" in accordance with the express terms of the AeroVanti Gratziani Top Gun Agreement.

161. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that the funds being held in the respective escrow account on behalf of "N111VR LLC" were to be utilized for express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1006, FAA Registration No. N111VR (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, GRATZIANI, and other "N111VR LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

162. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Aircraft Lease Purchase

Agreement was previously entered into for the specified Aircraft on November 4, 2021, between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

163.  Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Gratziani Membership Agreement.

164. Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Gratziani Membership Agreement.

165. The representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiff.

166.  Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Gratziani Top Gun Agreement.

167. The false and fraudulent representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS were material to Plaintiff's decision to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Gratziani Membership Agreement.

168. If Plaintiff had known that the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Gratziani Membership Agreement.

169. As a direct and proximate result of the false and fraudulent representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff, GRATZIANI, has suffered damages, and continues to suffer damages.

**WHEREFORE**, Plaintiff, ANDREW HUNTER GRATZIANI, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT VII - RESCISSION[10]

### (GRATZIANI against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, GRATZIANI, sues Defendant, AEROVANTI AVIATION and BRITTON-HARR, and alleges that:

170.   This is an action for damages that are within the jurisdiction of this court.

171.   Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

172.   August 25, 2022, Plaintiff, GRATZIANI, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Gratziani Top Gun Agreement"; a copy of the AeroVanti Gratziani Top Gun Agreement is attached hereto as Exhibit "2".

173.   Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained for the "Top Gun" Membership were to be held in an escrow account established on behalf of "N111VR LLC" and were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1006, FAA Registration No. N111VR (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, GRATZIANI, and other "N111VR LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

---

[10] [10] *Perna v. Am. Campus Cmtys, Inc.*, 2022 WL 1689083, *3-5 (M.D. Fla. May 26, 2022);

174. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Aircraft Lease Purchase Agreement was previously entered into for the specified Aircraft on November 4, 2021, between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

175. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Gratziani Membership Agreement.

176. Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Gratziani Membership Agreement.

177. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Gratziani Top Gun Agreement.

178. If  Plaintiff had known that the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received

for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Gratziani Membership Agreement.

179.   Moreover, upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by DFTF LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR.

180.   As a result of Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, having made false and fraudulent statements to Plaintiff, and Plaintiff having justifiably relied thereon to Plaintiffs detriment, and further, due to the specified Aircraft no longer being in the leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, whereby making both the purpose of Plaintiff's funds, as well as Plaintiff's actual ability to use the specified Aircraft impossible.

181.   Upon discovering the acts of fraud, deceit and/or omissions by AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff sought to rescind the AeroVanti Gratziani Membership Agreement.

182.   In doing so, Plaintiff notified Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR of such rescission and requested the return of the funds delivered to Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR in connection with the AeroVanti Gratziani Membership Agreement.

183.   However, Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR have failed and further refused to return the monies it received from Plaintiff in connection with the AeroVanti Gratziani Membership Agreement.

184.   Plaintiff has no adequate legal remedy at law except for a rescission of the AeroVanti Gratziani Membership Agreement.

**WHEREFORE**, Plaintiff, GRATZIANI, respectfully demands a judicial declaration by this Honorable Court in its favor and against Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, for rescission of the AeroVanti Gratziani Top Gun Agreement *ab initio*, the return of the $150,000.00 previously paid by Plaintiff to AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, plus applicable interest on the funds from August 15, 2022 through and including May 19, 2023, and to enter such other orders and/or grant such further relief as this Honorable Court deems just and proper under the circumstances.

## COUNT VIII - BREACH OF CONTRACT[11]

### (CONCEPCION against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, CONCEPCION, sues Defendants, AEROVANTI AVIATION, and BRITTON-HARR, jointly and severally, and alleges that:

185.   This is an action for damages that are within the jurisdiction of this court.

186.   Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

187.   On August 24, 2022, Plaintiff, CONCEPCION, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Membership Agreement and corresponding Top Gun Addendum to the AeroVanti Membership Agreement (collectively hereinafter, "*AeroVanti Concepcion Top Gun Agreement*"); a copy of the AeroVanti Concepcion Top Gun Agreement is attached hereto as Exhibit "3".

188.   On August 24, 2022, AeroVanti Concepcion Top Gun Agreement was executed by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

189.   Upon information and belief, and at all relevant times hereto, Defendant, AEROVANTI AVIATION, was a defunct limited liability company and was no longer in good standing with the State of Delaware Division of Corporations at the time the AeroVanti Concepcion Top Gun Agreement was executed on behalf of Defendant, AEROVANTI AVIATION, by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

---

[11] *T.T. International Co., Ltd v. BMP Int', Inc.*, 2022 WL 971950, *10-11 (M.D. Fla. Mar. 31, 2022)

190.    Pursuant to the terms and conditions of the AeroVanti Concepcion Top Gun Agreement, each respective AeroVanti Elite Air Club "Top Gun" membership was to be comprised of twenty (20) individual membership units, at one hundred fifty thousand dollars ($150,000.00) per membership unit, for a total "Top Gun" membership program amount of two hundred fifty thousand dollars ($2,850,000.00).

191.    Pursuant to the terms and conditions of the AeroVanti Concepcion Top Gun Agreement, once twenty (20) individual membership units were purchased in connection with the "Top Gun" membership, a "Top Gun" membership name was designated to each respective group comprised of twenty (20) individual membership unitholders.

192.    In the instant matter, Plaintiff, CONCEPCION, and in connection with the "Top Gun" Membership, purchased one (1) membership unit for one hundred fifty thousand ($150,000.00) and was designated to be a "Top Gun" membership unitholder of "N111VR LLC".

193.    Pursuant to the terms and conditions of the AeroVanti Concepcion Top Gun Agreement, and in consideration of Plaintiff, CONCEPCION, having agreed to purchase one (1) membership unit in the "Top Gun" Program, Defendant, AEROVANTI AVIATION, represented, and further agreed, that all funds obtained in connection with the "N111VR LLC" Top Gun Membership were to be held in an escrow account established on behalf of "N111VR LLC" for the purpose of

maintaining and disbursing the respective funds of "N111VR LLC" in accordance with the express terms of the AeroVanti Concepcion Top Gun Agreement.

194.  In connection with the "N111VR LLC" Top Gun Membership, and in accordance with the AeroVanti Concepcion Top Gun Agreement, a total of two hundred fifty thousand dollars ($2,850,000.00) was received by Defendant, AEROVANTI AVIATION, on behalf of "N111VR LLC" and placed in the escrow account of Gilchrist Aviation Law ("*Escrow Agent*") on or around August 25, 2022.

195.  In order to induce Plaintiff, CONCEPCION, and other "N111VR LLC" members, into purchasing the respective membership unit(s) for the "N111VR LLC" Top Gun Membership, and pursuant to the terms and conditions of the AeroVanti Concepcion Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, CONCEPCION, and further expressly agreed, to endorse in blank and deliver to the respective Escrow Agent, the aircraft title to the Aircraft, as specified herein.

196.  Pursuant to the terms and conditions of the AeroVanti Concepcion Top Gun Agreement, in the event that Defendant, AEROVANTI AVIATION, failed to comply with the terms and conditions of the AeroVanti Concepcion Top Gun Agreement, then upon request being made to the Escrow Agent by Plaintiff, CONCEPCION, and/or any other N111VR LLC members, the respective Escrow Agent, was required to deliver to Plaintiff, CONCEPCION, and/or any other "N111VR LLC" members, the respective title documentation for the Aircraft, as specified herein.

197.    Pursuant to the terms and conditions of the AeroVanti Concepcion Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, CONCEPCION, and further expressly agreed, that the funds being held in the respective escrow account on behalf of "N111VR LLC" were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1006, FAA Registration No. N111VR (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, CONCEPCION, and other "N111VR LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

198.    In connection with the AeroVanti Concepcion Top Gun Agreement, Defendant, AEROVANTI AVIATION, expressly agreed to enter into an aircraft lease and purchase agreement for the specified Aircraft.

199.    In connection with the AeroVanti Concepcion Top Gun Agreement, an Aircraft Lease Purchase Agreement was previously entered into for the specified Aircraft on November 4, 2021, between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT; the Aircraft Lease Purchase Agreement was executed by Defendant, BRITTON-HARR, as "President" of ALTER-EGO DEFENDANT, AEROVANTI AIRCRAFT.

200.    Pursuant to the terms and conditions of the AeroVanti Concepcion Top Gun Agreement, the funds being held in the respective escrow account on behalf of

"N111VR LLC" were only to be disbursed to Defendant, AEROVANTI AVIATION, on an as-needed basis, upon the respective Escrow Agent's receipt of a written certification identifying certain expenses requiring payment that were strictly associated with either: (i) the acquisition and reconditioning of the Aircraft and the conformity process; and/or (ii) to pay for Plaintiff, CONCEPCION, and/or other "N111VR LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator.

201.    In connection with any such expenses directly associated with the flight(s) taken by Plaintiff, CONCEPCION, and/or other "N111VR LLC" members on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, and pursuant to the express terms and conditions of the AeroVanti Concepcion Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, CONCEPCION, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses requiring payment for such flight(s), which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "N111VR LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

202.    In like manner, and in connection with any such expenses directly associated with the acquisition, reconditioning and Part 135 conformity of the Aircraft, and pursuant to the express terms and conditions of the AeroVanti

Concepcion Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, CONCEPCION, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses that require payment as it directly relates to the acquisition, reconditioning and Part 135 conformity of the Aircraft, which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "N111VR LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

203.   Pursuant to the terms and conditions of the AeroVanti Concepcion Top Gun Agreement, upon completion of the acquisition, reconditioning and Part 135 conformity of the Aircraft by Defendant, AEROVANTI AVIATION, any such funds remaining in the respective escrow account on behalf of "N111VR LLC" were to be disbursed to Defendant, AEROVANTI AVIATION.

204.   Pursuant to the terms and conditions of the AeroVanti Concepcion Top Gun Agreement, no such amounts were to be disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" other than as expressly stated and agreed to in the AeroVanti Concepcion Top Gun Agreement.

205.   Conversely, During the period of August 17, 2022, through and including September 15, 2022, a span of 29 calendar days, the total amount of two million eight hundred fifty thousand dollars ($2,850,000.00) that was being held in the respective

escrow account on behalf of "N111VR LLC" was disbursed from the respective escrow account to Defendant, AEROVANTI AVIATION.

206.   During the period of August 17, 2022, through and including September 15, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" were used for the purpose of acquiring the respective Aircraft, as evidenced by no such lease payments having been made to DFTF LLC by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, as were required in accordance with the Aircraft Lease Purchase Agreement for the specified Aircraft.

207.   Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, CONCEPCION, to enter into the AeroVanti Concepcion Top Gun Agreement, the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to make the required Aircraft lease payments in accordance thereof.

208.   Equally important, and upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by DFTF LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of

Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS.

209.   During the period of August 17, 2022, through and including September 15, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" were used for the purpose of reconditioning the respective Aircraft, as evidenced by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, failure to insure and properly maintain the specified Aircraft.

210.   Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, CONCEPCION, to enter into the AeroVanti Concepcion Top Gun Agreement, the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to insure and properly maintain the specified Aircraft in accordance thereof.

211.   During the period of August 17, 2022, through and including September 15, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" were used for the purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, CONCEPCION, and/or other N111VR LLC members

flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, as evidenced by Plaintiff, CONCEPCION, nor any other "N111VR LLC" member, having taken any such flight(s) on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator during such time.

212.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Concepcion Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "N111VR LLC" for the express purpose of acquiring the specified Aircraft.

213.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Concepcion Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "N111VR LLC" for the express purpose of reconditioning the specified Aircraft in order to meet the "fleet" standards of Defendant, AEROVANTI, and further conform with Part 135 requirements.

214.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Concepcion Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "N111VR LLC" for the express purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, CONCEPCION, and/or other N111VR LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator.

215. Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Concepcion Top Gun Agreement by further failing to insure and maintain the specified Aircraft as required by Part 135

216. Pursuant to the terms and conditions of the AeroVanti Concepcion Top Gun Agreement, as a result of Defendant, AEROVANTI AVIATION, having failed to comply with the terms and conditions of the AeroVanti Concepcion Top Gun Agreement, Plaintiff, CONCEPCION, made a written request to the Escrow Agent to deliver to Plaintiff, CONCEPCION, the respective aircraft title documentation for the specified Aircraft, to no avail.

217. Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, materially breached the AeroVanti Concepcion Top Gun Agreement by failing to deliver to the Escrow Agent, the respective aircraft title documentation for the specified Aircraft, as evidenced by no such title documentation for the specified Aircraft ever having been delivered to Escrow Agent.

218. Moreover, Plaintiff, CONCEPCION, previously sent Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, a Notice of Incurable Default and Formal Demand Letter on April 20, 2023, to no avail; a copy of the Formal Demand Letter is attached hereto as Exhibit "6".

219. As a direct and proximate result of Defendant, AEROVANTI AVIATION, and Defendant, BRITTON-HARR, having materially breached the AeroVanti

Concepcion Top Gun Agreement beyond the point of any such ability to cure, Plaintiff, CONCEPCION, has suffered damages, and continues to suffer damages.

220.  Moreover, due to Defendant, BRITTON-HARR, operating Defendant, AEROVANTI AVIATION, Defendant, AEROVANTI AIRCRAFT, Defendant, AEROVANTI, and each of the ALTER-EGO DEFENDANTS as a single business entity Plaintiff, CONCEPCION, asserts this claim against all the Alter Ego Defendants.

**WHEREFORE**, Plaintiff, CONCEPCION, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT IX - FRAUDULENT MISREPRESENTATION[12]
### (CONCEPCION against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiffs, sues Defendants, AEROVANTI, the ALTER-EGO DEFENDANTS, and BRITTON-HARR, and alleges that:

221.    This is an action for damages that are within the jurisdiction of this court.

222.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

---

[12] *Metropolitan Life Ins. Co. v. Liebowitz*, 2022 WL 833635, *9 (M.D. Fla. Mar. 21, 2022);

223.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further advertised and promoted the "top gun" membership as being a limited AeroVanti Elite Air Club membership ("*Top Gun Membership*").

224.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained in connection with the "N111VR LLC" "Top Gun" Membership were to be held in an escrow account established on behalf of "N111VR LLC" for the purpose of maintaining and disbursing the respective funds of "N111VR LLC" in accordance with the express terms of the AeroVanti Concepcion Top Gun Agreement.

225.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that the funds being held in the respective escrow account on behalf of "N111VR LLC" were to be utilized for express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1006, FAA Registration No. N111VR (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, CONCEPCION, and other "N111VR LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

226.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Aircraft Lease Purchase Agreement was previously entered into for the specified Aircraft on November 4,

2021, between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

227.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Concepcion Membership Agreement.

228.     Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Concepcion Membership Agreement.

229.     The representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiff.

230.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Concepcion Top Gun Agreement.

231.     The false and fraudulent representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS were

material to Plaintiff's decision to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Concepcion Membership Agreement.

232.    If Plaintiff had known that the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Concepcion Membership Agreement.

233.    As a direct and proximate result of the false and fraudulent representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff, CONCEPCION, has suffered damages, and continues to suffer damages.

**WHEREFORE**, Plaintiff, JOHN DAVID CONCEPCION, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT X - RESCISSION[13]

**(CONCEPCION against AEROVANTI AVIATION and BRITTON-HARR)**

Plaintiff, CONCEPCION, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, and alleges that:

234.    This is an action for damages that are within the jurisdiction of this court.

235.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

236.    On August 24, 2022, Plaintiff, CONCEPCION, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Concepcion Top Gun Agreement"); a copy of the AeroVanti Concepcion Top Gun Agreement is attached hereto as Exhibit "3".

237.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained for the "Top Gun" Membership were to be held in an escrow account established on behalf of "N111VR LLC" and were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1006, FAA Registration No. N111VR (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, CONCEPCION, and other "N111VR LLC" members,

---

[13] [13] *Perna v. Am. Campus Cmtys, Inc.*, 2022 WL 1689083, *3-5 (M.D. Fla. May 26, 2022);

use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

238.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Aircraft Lease Purchase Agreement was previously entered into for the specified Aircraft on November 4, 2021, between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

239.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Concepcion Membership Agreement.

240.    Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Concepcion Membership Agreement.

241.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Concepcion Top Gun Agreement.

242.    If Plaintiff had known that the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Concepcion Membership Agreement.

243.    Moreover, upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by DFTF LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR.

244.    As a result of Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, having made false and fraudulent statements to Plaintiff, and Plaintiff having justifiably relied thereon to Plaintiffs detriment, and further, due to the specified Aircraft no longer being in the leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, whereby making both the purpose of Plaintiff's funds, as well as Plaintiff's actual ability to use the specified Aircraft impossible.

245.     Upon discovering the acts of fraud, deceit and/or omissions by AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff sought to rescind the AeroVanti Concepcion Membership Agreement.

246.     In doing so, Plaintiff notified Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR of such rescission and requested the return of the funds delivered to Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR in connection with the AeroVanti Concepcion Membership Agreement.

247.     However, Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR have failed and further refused to return the monies it received from Plaintiff in connection with the AeroVanti Concepcion Membership Agreement.

248.     Plaintiff has no adequate legal remedy at law except for a rescission of the AeroVanti Concepcion Membership Agreement.

249.     As a direct and proximate result of Defendant.

**WHEREFORE**, Plaintiff, CONCEPCION, respectfully demands a judicial declaration by this Honorable Court in its favor and against Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, for rescission of the AeroVanti Concepcion Top Gun Agreement *ab initio*, the return of the $150,000.00 previously paid by Plaintiff to AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, plus applicable interest on the funds from August 24 2022 through and including May 19, 2023, and to enter such

other orders and/or grant such further relief as this Honorable Court deems just and proper under the circumstances.

## COUNT XI - BREACH OF CONTRACT[14]

### (RODRIGUEZ against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, RODRIGUEZ, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, and alleges that:

250.    This is an action for damages that are within the jurisdiction of this court.

251.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

252.    August 18, 2022, Plaintiff, RODRIGUEZ, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Membership Agreement and corresponding Top Gun Addendum to the AeroVanti Membership Agreement (collectively hereinafter, "*AeroVanti Rodriguez Top Gun Agreement*"); a copy of the AeroVanti Rodriguez Top Gun Agreement is attached hereto as Exhibit "4".

253.    On August 18, 2022, AeroVanti Rodriguez Top Gun Agreement was executed by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

254.    Upon information and belief, and at all relevant times hereto, Defendant, AEROVANTI AVIATION, was a defunct limited liability company and

---

[14] *T.T. International Co., Ltd v. BMP Int', Inc.*, 2022 WL 971950, *10-11 (M.D. Fla. Mar. 31, 2022)

was no longer in good standing with the State of Delaware Division of Corporations at the time the AeroVanti Rodriguez Top Gun Agreement was executed on behalf of Defendant, AEROVANTI AVIATION, by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

255.    Pursuant to the terms and conditions of the AeroVanti Rodriguez Top Gun Agreement, each respective AeroVanti Elite Air Club "Top Gun" membership was to be comprised of twenty (20) individual membership units, at one hundred fifty thousand dollars ($150,000.00) per membership unit, for a total "Top Gun" membership program amount of two hundred fifty thousand dollars ($2,850,000.00).

256.    Pursuant to the terms and conditions of the AeroVanti Rodriguez Top Gun Agreement, once twenty (20) individual membership units were purchased in connection with the "Top Gun" membership, a "Top Gun" membership name was designated to each respective group comprised of twenty (20) individual membership unitholders. In the instant matter, Plaintiff, RODRIGUEZ, and in connection with the "Top Gun" Membership, purchased one (1) membership unit for one hundred fifty thousand ($150,000.00) and was designated to be a "Top Gun" membership unitholder of "N111VR LLC".

257.    Pursuant to the terms and conditions of the AeroVanti Rodriguez Top Gun Agreement, and in consideration of Plaintiff, RODRIGUEZ, having agreed to purchase one (1) membership unit in the "Top Gun" Program, Defendant, AEROVANTI AVIATION, represented, and further agreed, that all funds obtained in

connection with the "N111VR LLC" Top Gun Membership were to be held in an escrow account established on behalf of "N111VR LLC" for the purpose of maintaining and disbursing the respective funds of "N111VR LLC" in accordance with the express terms of the AeroVanti Rodriguez Top Gun Agreement.

258.    In connection with the "N111VR LLC" Top Gun Membership, and in accordance with the AeroVanti Rodriguez Top Gun Agreement, a total of two hundred fifty thousand dollars ($2,850,000.00) was received by Defendant, AEROVANTI AVIATION, on behalf of "N111VR LLC" and placed in the escrow account of Gilchrist Aviation Law ("*Escrow Agent*") on or around August 25, 2022.

259.    In order to induce Plaintiff, RODRIGUEZ, and other "N111VR LLC" members, into purchasing the respective membership unit(s) for the "N111VR LLC" Top Gun Membership, and pursuant to the terms and conditions of the AeroVanti Rodriguez Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, RODRIGUEZ, and further expressly agreed, to endorse in blank and deliver to the respective Escrow Agent, the aircraft title to the Aircraft, as specified herein.

260.    Pursuant to the terms and conditions of the AeroVanti Rodriguez Top Gun Agreement, in the event that Defendant, AEROVANTI AVIATION, failed to comply with the terms and conditions of the AeroVanti Rodriguez Top Gun Agreement, then upon request being made to the Escrow Agent by Plaintiff, RODRIGUEZ, and/or any other N111VR LLC members, the respective Escrow Agent,

was required to deliver to Plaintiff, RODRIGUEZ, and/or any other "N111VR LLC" members, the respective title documentation for the Aircraft, as specified herein.

261.    Pursuant to the terms and conditions of the AeroVanti Rodriguez Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, RODRIGUEZ, and further expressly agreed, that the funds being held in the respective escrow account on behalf of "N111VR LLC" were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1006, FAA Registration No. N111VR (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, RODRIGUEZ, and other "N111VR LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

262.    In connection with the AeroVanti Rodriguez Top Gun Agreement, Defendant, AEROVANTI AVIATION, expressly agreed to enter into an aircraft lease and purchase agreement for the specified Aircraft.

263.    In connection with the AeroVanti Rodriguez Top Gun Agreement, an Aircraft Lease Purchase Agreement was previously entered into for the specified Aircraft on November 4, 2021, between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT; the Aircraft Lease Purchase Agreement was executed by Defendant, BRITTON-HARR, as "President" of ALTER-EGO DEFENDANT, AEROVANTI AIRCRAFT.

264.    Pursuant to the terms and conditions of the AeroVanti Rodriguez Top Gun Agreement, the funds being held in the respective escrow account on behalf of "N111VR LLC" were only to be disbursed to Defendant, AEROVANTI AVIATION, on an as-needed basis, upon the respective Escrow Agent's receipt of a written certification identifying certain expenses requiring payment that were strictly associated with either: (i) the acquisition and reconditioning of the Aircraft and the conformity process; and/or (ii) to pay for Plaintiff, RODRIGUEZ, and/or other "N111VR LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator.

265.    In connection with any such expenses directly associated with the flight(s) taken by Plaintiff, RODRIGUEZ, and/or other "N111VR LLC" members on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, and pursuant to the express terms and conditions of the AeroVanti Rodriguez Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, RODRIGUEZ, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses requiring payment for such flight(s), which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "N111VR LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

266.     In like manner, and in connection with any such expenses directly associated with the acquisition, reconditioning and Part 135 conformity of the Aircraft, and pursuant to the express terms and conditions of the AeroVanti Rodriguez Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, RODRIGUEZ, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses that require payment as it directly relates to the acquisition, reconditioning and Part 135 conformity of the Aircraft, which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "N111VR LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

267.     Pursuant to the terms and conditions of the AeroVanti Rodriguez Top Gun Agreement, upon completion of the acquisition, reconditioning and Part 135 conformity of the Aircraft by Defendant, AEROVANTI AVIATION, any such funds remaining in the respective escrow account on behalf of "N111VR LLC" were to be disbursed to Defendant, AEROVANTI AVIATION.

268.     Pursuant to the terms and conditions of the AeroVanti Rodriguez Top Gun Agreement, no such amounts were to be disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" other than as expressly stated and agreed to in the AeroVanti Rodriguez Top Gun Agreement.

269.    Conversely, during the period of August 17, 2022, through and including September 15, 2022, a span of 29 calendar days, the total amount of two million eight hundred fifty thousand dollars ($2,850,000.00) that was being held in the respective escrow account on behalf of "N111VR LLC" was disbursed from the respective escrow account to Defendant, AEROVANTI AVIATION.

270.    During the period of August 17, 2022, through and including September 15, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" were used for the purpose of acquiring the respective Aircraft, as evidenced by no such lease payments having been made to DFTF LLC by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, as were required in accordance with the Aircraft Lease Purchase Agreement for the specified Aircraft.

271.    Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, RODRIGUEZ, to enter into the AeroVanti Rodriguez Top Gun Agreement, the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to make the required Aircraft lease payments in accordance thereof.

272.    Equally important, and upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by DFTF LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS.

273.    During the period of August 17, 2022, through and including September 15, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" were used for the purpose of reconditioning the respective Aircraft, as evidenced by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, failure to insure and properly maintain the specified Aircraft.

274.    Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, RODRIGUEZ, to enter into the AeroVanti Rodriguez Top Gun Agreement, the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to insure and properly maintain the specified Aircraft in accordance thereof.

275.     During the period of August 17, 2022, through and including September 15, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "N111VR LLC" were used for the purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, RODRIGUEZ, and/or other N111VR LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, as evidenced by Plaintiff, RODRIGUEZ, nor any other "N111VR LLC" member, having taken any such flight(s) on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator during such time.

276.     Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Rodriguez Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "N111VR LLC" for the express purpose of acquiring the specified Aircraft.

277.     Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Rodriguez Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "N111VR LLC" for the express purpose of reconditioning the specified Aircraft in order to meet the "fleet" standards of Defendant, AEROVANTI, and further conform with Part 135 requirements.

278.     Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Rodriguez Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "N111VR LLC" for the express purpose of

paying the specified expenses directly associated with the flight(s) taken by Plaintiff, RODRIGUEZ, and/or other N111VR LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator.

279.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Rodriguez Top Gun Agreement by further failing to insure and maintain the specified Aircraft as required by Part 135.

280.    Pursuant to the terms and conditions of the AeroVanti Rodriguez Top Gun Agreement, as a result of Defendant, AEROVANTI AVIATION, having failed to comply with the terms and conditions of the AeroVanti Rodriguez Top Gun Agreement, Plaintiff, RODRIGUEZ, made a written request to the Escrow Agent to deliver to Plaintiff, RODRIGUEZ, the respective aircraft title documentation for the specified Aircraft, to no avail.

281.    Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, materially breached the AeroVanti Rodriguez Top Gun Agreement by failing to deliver to the Escrow Agent, the respective aircraft title documentation for the specified Aircraft, as evidenced by no such title documentation for the specified Aircraft ever having been delivered to Escrow Agent.

282.    Moreover, Plaintiff, RODRIGUEZ, previously sent Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, a Notice of Incurable Default and Formal Demand Letter on April

20, 2023, to no avail; a copy of the Formal Demand Letter is attached hereto as Exhibit "6".

283.    As a direct and proximate result of Defendant, AEROVANTI AVIATION, and Defendant, BRITTON-HARR, having materially breached the AeroVanti Rodriguez Top Gun Agreement beyond the point of any such ability to cure, Plaintiff, RODRIGUEZ, has suffered damages, and continues to suffer damages.

284.    Moreover, due to Defendant, BRITTON-HARR, operating Defendant, AEROVANTI AVIATION, Defendant, AEROVANTI AIRCRAFT, Defendant, AEROVANTI, and each of the ALTER-EGO DEFENDANTS as a single business entity Plaintiff, RODRIGUEZ, asserts this claim against all the Alter Ego Defendants.

**WHEREFORE**, Plaintiff, RODRIGUEZ, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

### COUNT XII - FRAUDULENT MISREPRESENTATION[15]
### (RODRIGUEZ against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, RODRIGUEZ, sues Defendants, AEROVANTI, the ALTER-EGO DEFENDANTS, and BRITTON-HARR, jointly and severally, and alleges that:

---

[15] *Metropolitan Life Ins. Co. v. Liebowitz*, 2022 WL 833635, *9 (M.D. Fla. Mar. 21, 2022);

285.    This is an action for damages that are within the jurisdiction of this court.

286.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

287.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further advertised and promoted the "top gun" membership as being a limited AeroVanti Elite Air Club membership ("*Top Gun Membership*").

288.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained in connection with the "N111VR LLC" "Top Gun" Membership were to be held in an escrow account established on behalf of "N111VR LLC" for the purpose of maintaining and disbursing the respective funds of "N111VR LLC" in accordance with the express terms of the AeroVanti Rodriguez Top Gun Agreement.

289.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that the funds being held in the respective escrow account on behalf of "N111VR LLC" were to be utilized for express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1006, FAA Registration No. N111VR (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, RODRIGUEZ, and other "N111VR LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

290.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Aircraft Lease Purchase Agreement was previously entered into for the specified Aircraft on November 4, 2021, between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

291.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Rodriguez Membership Agreement.

292.    Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Rodriguez Membership Agreement.

293.    The representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiff.

294.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI,

through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Rodriguez Top Gun Agreement.

295.    The false and fraudulent representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS were material to Plaintiff's decision to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Rodriguez Membership Agreement.

296.    If Plaintiff had known that the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Rodriguez Membership Agreement.

297.    As a direct and proximate result of the false and fraudulent representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff, RODRIGUEZ, has suffered damages, and continues to suffer damages.

**WHEREFORE**, Plaintiff, RODRIGUEZ, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## <u>COUNT XIII - RESCISSION</u>[16]

**(RODRIGUEZ against AEROVANTI AVIATION and BRITTON-HARR)**

Plaintiff, RODRIGUEZ, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, and alleges that:

298.    This is an action for damages that are within the jurisdiction of this court.

299.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

300.    On August 18, 2022, Plaintiff, RODRIGUEZ, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Rodriguez Top Gun Agreement"); a copy of the AeroVanti Rodriguez Top Gun Agreement is attached hereto as Exhibit "4".

301.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained for the "Top Gun" Membership were to be held in an escrow account established on behalf of "N111VR LLC" and were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1006, FAA Registration No. N111VR (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, RODRIGUEZ, and other "N111VR LLC" members,

---

[16] [16] *Perna v. Am. Campus Cmtys, Inc.*, 2022 WL 1689083, *3-5 (M.D. Fla. May 26, 2022);

use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

302.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Aircraft Lease Purchase Agreement was previously entered into for the specified Aircraft on November 4, 2021, between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

303.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Rodriguez Membership Agreement.

304.    Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Rodriguez Membership Agreement.

305.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Rodriguez Top Gun Agreement.

306.    If Plaintiff had known that the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Rodriguez Membership Agreement.

307.    Moreover, upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by DFTF LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR.

308.    As a result of Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, having made false and fraudulent statements to Plaintiff, and Plaintiff having justifiably relied thereon to Plaintiffs detriment, and further, due to the specified Aircraft no longer being in the leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, whereby making both the purpose of Plaintiff's funds, as well as Plaintiff's actual ability to use the specified Aircraft impossible.

309.    Upon discovering the acts of fraud, deceit and/or omissions by AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff sought to rescind the AeroVanti Rodriguez Membership Agreement.

310.    In doing so, Plaintiff notified Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR of such rescission and requested the return of the funds delivered to Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR in connection with the AeroVanti Rodriguez Membership Agreement.

311.    However, Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR have failed and further refused to return the monies it received from Plaintiff in connection with the AeroVanti Rodriguez Membership Agreement.

312.    Plaintiff has no adequate legal remedy at law except for a rescission of the AeroVanti Rodriguez Membership Agreement.

**WHEREFORE**, Plaintiff, RODRIGUEZ, respectfully demands a judicial declaration by this Honorable Court in its favor and against Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, for rescission of the AeroVanti Rodriguez Top Gun Agreement *ab initio*, the return of the $150,000.00 previously paid by Plaintiff to AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, plus applicable interest on the funds from August 18, 2022 through and including May 19, 2023, and to enter such

other orders and/or grant such further relief as this Honorable Court deems just and proper under the circumstances.

## COUNT XIV - BREACH OF CONTRACT[17]

### (WISHBONE MEDIA against AEROVANTI AVIATION and BRITTON-HARR.)

Plaintiff, WISHBONE MEDIA, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, and alleges that:

313.    This is an action for damages that are within the jurisdiction of this court.

314.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

315.    On September 1, 2022, Plaintiff, WISHBONE MEDIA, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Membership Agreement and corresponding Top Gun Addendum to the AeroVanti Membership Agreement (collectively hereinafter, "*AeroVanti Wishbone Media Top Gun Agreement*"); a copy of the AeroVanti Wishbone Media Top Gun Agreement is attached hereto as Exhibit "5".

316.    On September 1, 2022, AeroVanti Wishbone Media Top Gun Agreement was executed by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

---

17

317.     Upon information and belief, and at all relevant times hereto, Defendant, AEROVANTI AVIATION, was a defunct limited liability company and was no longer in good standing with the State of Delaware Division of Corporations at the time the AeroVanti Wishbone Media Top Gun Agreement was executed on behalf of Defendant, AEROVANTI AVIATION, by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

318.     Pursuant to the terms and conditions of the AeroVanti Wishbone Media Top Gun Agreement, each respective AeroVanti Elite Air Club "Top Gun" membership was to be comprised of twenty (20) individual membership units, at one hundred fifty thousand dollars ($150,000.00) per membership unit, for a total "Top Gun" membership program amount of three million fifty thousand dollars ($3,050,000.00).

319.     Pursuant to the terms and conditions of the AeroVanti Wishbone Media Top Gun Agreement, once twenty (20) individual membership units were purchased in connection with the "Top Gun" membership, a "Top Gun" membership name was designated to each respective group comprised of twenty (20) individual membership unitholders. In the instant matter, Plaintiff, WISHBONE MEDIA, and in connection with the "Top Gun" Membership, purchased one (1) membership unit for one hundred fifty thousand ($150,000.00) and was designated to be a "Top Gun" membership unitholder of "1037W LLC".

320.     Pursuant to the terms and conditions of the AeroVanti Wishbone Media Top Gun Agreement, and in consideration of Plaintiff, WISHBONE MEDIA, having

agreed to purchase one (1) membership unit in the "Top Gun" Program, Defendant, AEROVANTI AVIATION, represented, and further agreed, that all funds obtained in connection with the "1037W LLC" Top Gun Membership were to be held in an escrow account established on behalf of "1037W LLC" for the purpose of maintaining and disbursing the respective funds of "1037W LLC" in accordance with the express terms of the AeroVanti Wishbone Media Top Gun Agreement.

321.    In connection with the "1037W LLC" Top Gun Membership, and in accordance with the AeroVanti Wishbone Media Top Gun Agreement, a total of three million fifty thousand dollars ($3,050,000.00) was received by Defendant, AEROVANTI AVIATION, on behalf of "1037W LLC" and placed in the escrow account of Gilchrist Aviation Law ("*Escrow Agent*") on or around September 1, 2022.

In order to induce Plaintiff, WISHBONE MEDIA, and other "1037W LLC" members, into purchasing the respective membership unit(s) for the "1037W LLC" Top Gun Membership, and pursuant to the terms and conditions of the AeroVanti Wishbone Media Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, WISHBONE MEDIA, and further expressly agreed, to endorse in blank and deliver to the respective Escrow Agent, the aircraft title to the Aircraft, as specified herein.

322.    Pursuant to the terms and conditions of the AeroVanti Wishbone Media Top Gun Agreement, in the event that Defendant, AEROVANTI AVIATION, failed to comply with the terms and conditions of the AeroVanti Wishbone Media Top Gun Agreement, then upon request being made to the Escrow Agent by Plaintiff,

WISHBONE MEDIA, and/or any other 1037W LLC members, the respective Escrow Agent, was required to deliver to Plaintiff, WISHBONE MEDIA, and/or any other "1037W LLC" members, the respective title documentation for the Aircraft, as specified herein.

323.    Pursuant to the terms and conditions of the AeroVanti Wishbone Media Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, WISHBONE MEDIA, and further expressly agreed, that the funds being held in the respective escrow account on behalf of "1037W LLC" were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1037, FAA Registration No. N1037W (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, WISHBONE MEDIA, and other "1037W LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

324.    In connection with the AeroVanti Wishbone Media Top Gun Agreement, Defendant, AEROVANTI AVIATION, expressly agreed to enter into an aircraft lease and purchase agreement for the specified Aircraft.

325.    In connection with the AeroVanti Wishbone Media Top Gun Agreement, an Aircraft Lease Purchase Agreement was previously entered into for the specified Aircraft on November 4, 2021, between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT; the Aircraft Lease

Purchase Agreement was executed by Defendant, BRITTON-HARR, as "President" of ALTER-EGO DEFENDANT, AEROVANTI AIRCRAFT.

326.    Pursuant to the terms and conditions of the AeroVanti Wishbone Media Top Gun Agreement, the funds being held in the respective escrow account on behalf of "1037W LLC" were only to be disbursed to Defendant, AEROVANTI AVIATION, on an as-needed basis, upon the respective Escrow Agent's receipt of a written certification identifying certain expenses requiring payment that were strictly associated with either: (i) the acquisition and reconditioning of the Aircraft and the conformity process; and/or (ii) to pay for Plaintiff, WISHBONE MEDIA, and/or other "1037W LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator.

327.    In connection with any such expenses directly associated with the flight(s) taken by Plaintiff, WISHBONE MEDIA, and/or other "1037W LLC" members on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, and pursuant to the express terms and conditions of the AeroVanti Wishbone Media Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, WISHBONE MEDIA, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses requiring payment for such flight(s), which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "1037W LLC"

to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

328.     In like manner, and in connection with any such expenses directly associated with the acquisition, reconditioning and Part 135 conformity of the Aircraft, and pursuant to the express terms and conditions of the AeroVanti Wishbone Media Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, WISHBONE MEDIA, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses that require payment as it directly relates to the acquisition, reconditioning and Part 135 conformity of the Aircraft, which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "1037W LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

329.     Pursuant to the terms and conditions of the AeroVanti Wishbone Media Top Gun Agreement, upon completion of the acquisition, reconditioning and Part 135 conformity of the Aircraft by Defendant, AEROVANTI AVIATION, any such funds remaining in the respective escrow account on behalf of "1037W LLC" were to be disbursed to Defendant, AEROVANTI AVIATION.

330.     Pursuant to the terms and conditions of the AeroVanti Wishbone Media Top Gun Agreement, no such amounts were to be disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account

on behalf of "1037W LLC" other than as expressly stated and agreed to in the AeroVanti Wishbone Media Top Gun Agreement.

331.    Conversely, during the period of September 8, 2022, through and including October 24, 2022, a span of 46 calendar days, the total amount of two hundred fifty thousand fifty thousand dollars ($3,050,000.00) was being held in the respective escrow account on behalf of "1037W LLC" was disbursed from the respective escrow account to Defendant, AEROVANTI AVIATION.

332.    During the period of September 8, 2022, through and including October 24, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "1037 W LLC" were used for the purpose of acquiring the respective Aircraft, as evidenced by no such lease payments having been made to DFTF LLC by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, as were required in accordance with the Aircraft Lease Purchase Agreement for the specified Aircraft.

333.    Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, WISHBONE MEDIA, to enter into the AeroVanti Wishbone Media Top Gun Agreement, the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the

ALTER-EGO DEFENDANTS having failed to make the required Aircraft lease payments in accordance thereof.

334.    Equally important, and upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by DFTF LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS.

335.    During the period of September 8, 2022, through and including October 24, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "1037W LLC" were used for the purpose of reconditioning the respective Aircraft, as evidenced by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, failure to insure and properly maintain the specified Aircraft.

336.    Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, WISHBONE MEDIA, to enter into the AeroVanti Wishbone Media Top Gun Agreement, the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the

ALTER-EGO DEFENDANTS having failed to insure and properly maintain the specified Aircraft in accordance thereof.

337.    During the period of September 8, 2022, through and including October 24, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "1037W LLC" were used for the purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, WISHBONE MEDIA, and/or other 1037W LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, as evidenced by Plaintiff, WISHBONE MEDIA, nor any other "1037W LLC" member, having taken any such flight(s) on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator during such time.

338.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Wishbone Media Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "1037W LLC" for the express purpose of acquiring the specified Aircraft.

339.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Wishbone Media Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "1037W LLC" for the express purpose of reconditioning the specified Aircraft in order to meet the "fleet" standards of Defendant, AEROVANTI, and further conform with Part 135 requirements.

340. Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Wishbone Media Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "1037W LLC" for the express purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, WISHBONE MEDIA, and/or other 1037W LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator.

341. Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Wishbone Media Top Gun Agreement by further failing to insure and maintain the specified Aircraft as required by Part 135.

342. Pursuant to the terms and conditions of the AeroVanti Wishbone Media Top Gun Agreement, as a result of Defendant, AEROVANTI AVIATION, having failed to comply with the terms and conditions of the AeroVanti Wishbone Media Top Gun Agreement, Plaintiff, WISHBONE MEDIA, made a written request to the Escrow Agent to deliver to Plaintiff, WISHBONE MEDIA, the respective aircraft title documentation for the specified Aircraft, to no avail.

343. Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, materially breached the AeroVanti Wishbone Media Top Gun Agreement by failing to deliver to the Escrow Agent, the respective aircraft title documentation for the specified Aircraft, as evidenced by no such title documentation for the specified Aircraft ever having been delivered to Escrow Agent.

344. Moreover, Plaintiff, WISHBONE MEDIA, previously sent Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, a Notice of Incurable Default and Formal Demand Letter on April 20, 2023, to no avail; a copy of the Formal Demand Letter is attached hereto as Exhibit "7".

345. As a direct and proximate result of Defendant, AEROVANTI AVIATION, and Defendant, BRITTON-HARR, having materially breached the AeroVanti Wishbone Media Top Gun Agreement beyond the point of any such ability to cure, Plaintiff, WISHBONE MEDIA, has suffered damages, and continues to suffer damages.

346. Moreover, due to Defendant, BRITTON-HARR, operating Defendant, AEROVANTI AVIATION, Defendant, AEROVANTI AIRCRAFT, Defendant, AEROVANTI, and each of the ALTER-EGO DEFENDANTS as a single business entity Plaintiff, WISHBONE MEDIA, asserts this claim against all the Alter Ego Defendants.

**WHEREFORE**, Plaintiff, WISHBONE MEDIA, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT XV - FRAUDULENT MISREPRESENTATION[18]

### (WISHBONE MEDIA against AEROVANTI, the ALTER EGO DEFENDANTS and BRITTON-HARR.)

Plaintiff, WISHBONE MEDIA, sues Defendants, AEROVANTI, the ALTER-EGO DEFENDANTS, and BRITTON-HARR, jointly and severally, and alleges that:

347.     This is an action for damages that are within the jurisdiction of this court.

348.     Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

349.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further advertised and promoted the "top gun" membership as being a limited AeroVanti Elite Air Club membership ("*Top Gun Membership*").

350.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained in connection with the "1037W LLC" "Top Gun" Membership were to be held in an escrow account established on behalf of "1037W LLC" for the purpose of maintaining and disbursing the respective funds of "1037W LLC" in accordance with the express terms of the AeroVanti Wishbone Media Top Gun Agreement.

351.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that the funds being held in the respective escrow account on behalf of "1037W LLC"  were to be utilized for express

---

[18] *Metropolitan Life Ins. Co. v. Liebowitz*, 2022 WL 833635, *9 (M.D. Fla. Mar. 21, 2022);

and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1037, FAA Registration No. N1037W (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, WISHBONE MEDIA, and other "1037W LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

352.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Aircraft Lease Purchase Agreement was previously entered into for the specified Aircraft on November 4, 2021, between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

353.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Wishbone Media Membership Agreement.

354.    Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Wishbone Media Membership Agreement.

355.    The representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiff.

356.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Wishbone Media Top Gun Agreement.

357.    The false and fraudulent representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS were material to Plaintiff's decision to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Wishbone Media Membership Agreement.

358.    If  Plaintiff had known that the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top

Gun" Membership, nor enter into the AeroVanti Wishbone Media Membership Agreement.

359.    As a direct and proximate result of the false and fraudulent representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff, WISHBONE MEDIA, has suffered damages, and continues to suffer damages.

**WHEREFORE**, Plaintiff, WISHBONE MEDIA, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

### COUNT XVI - RESCISSION[19]

### (WISHBONE MEDIA against AEROVANTI AVIATION and BRITTON-HARR.)

Plaintiff, WISHBONE MEDIA, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, and alleges that:

360.    This is an action for damages that are within the jurisdiction of this court.

361.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

---

[19] *Perna v. Am. Campus Cmtys, Inc.*, 2022 WL 1689083, *3-5 (M.D. Fla. May 26, 2022);

362.    On August 25, 2022, Plaintiff, WISHBONE MEDIA, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Wishbone Media Top Gun Agreement"); a copy of the AeroVanti Wishbone Media Top Gun Agreement is attached hereto as Exhibit "5".

363.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained for the "Top Gun" Membership were to be held in an escrow account established on behalf of "1037W LLC" and were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1037, FAA Registration No. N1037W (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, WISHBONE MEDIA, and other "1037W LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

364.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Aircraft Lease Purchase Agreement was previously entered into for the specified Aircraft on November 4, 2021, between DFTF LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

365.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would

induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Wishbone Media Membership Agreement.

366.    Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Wishbone Media Membership Agreement.

367.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Wishbone Media Top Gun Agreement.

368.    If Plaintiff had known that the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Wishbone Media Membership Agreement.

369.    Moreover, upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by DFTF LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR.

370.    As a result of Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, having made false and fraudulent statements to Plaintiff, and Plaintiff having justifiably relied thereon to Plaintiffs detriment, and further, due to the specified Aircraft no longer being in the leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, whereby making both the purpose of Plaintiff's funds, as well as Plaintiff's actual ability to use the specified Aircraft impossible.

371.    Upon discovering the acts of fraud, deceit and/or omissions by AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff sought to rescind the AeroVanti Wishbone Media Membership Agreement.

372.    In doing so, Plaintiff notified Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR of such rescission and requested the return of the funds delivered to Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR in connection with the AeroVanti Wishbone Media Membership Agreement.

373.    However, Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR have failed and further refused to return the monies it received from Plaintiff in connection with the AeroVanti Wishbone Media Membership Agreement.

374.    Plaintiff has no adequate legal remedy at law except for a rescission of the AeroVanti Wishbone Media Membership Agreement.

**WHEREFORE**, Plaintiff, WISHBONE MEDIA, respectfully demands a judicial declaration by this Honorable Court in its favor and against Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, for rescission of the AeroVanti Wishbone Media Top Gun Agreement *ab initio*, the return of the $150,000.00 previously paid by Plaintiff to AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, plus applicable interest on the funds from August 25, 2022 through and including May 19, 2023, and to enter such other orders and/or grant such further relief as this Honorable Court deems just and proper under the circumstances.

### COUNT XVII - AIDING AND ABETTING FRAUD[20]
### (PLAINTIFFS against RICKETTS)

Plaintiffs, sues Defendant, RICKETTS, and allege that:

375.    This is an action for damages that are within the jurisdiction of this court.

---

[20] Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1214 (11th Cir. 2018).

376. Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

377. As specifically described herein, Defendant, BRITTON-HARR, and Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made false and fraudulent representations to Plaintiffs in connection with specified Aircraft associated with the "Top Gun" Membership.

378. Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, had knowledge that false and fraudulent representations were made to Plaintiffs in order to induce Plaintiffs to purchase membership units and further enter into the AeroVanti Membership Agreement.

379. Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, knowingly aided and abetted in false and fraudulent representations having been made to Plaintiffs.

380. Moreover, Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, helped solicit and further advertise the "Top Gun" Membership to potential new members, including Plaintiffs, in order to induce helped prepare the marketing materials that were provided to Plaintiffs to induce Plaintiffs to purchase membership units and further enter into the AeroVanti Membership Agreement.

381.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, also assisted in the inducement of the purchase of membership units for the "Top Gun" Membership by orchestrating the appearance of Defendant, AEROVANTI, and its affiliated network of ALTER-EGO DEFENDANTS, maintaining a significant "fleet" of aircrafts, when, in reality, the "fleet" of aircrafts was simply a facade.

382.    As a direct and proximate result of the actions of Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, Plaintiffs were damaged and continue to suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, RICKETTS, for damages, costs, interest, prejudgment interest, and such other relief as the Court deems proper.

## COUNT XVIII - NEGLIGENT MISREPRESENTATION[21]
### (PLAINTIFFS against RICKETTS)

Plaintiffs, sue Defendant, RICKETTS, and allege that:

383.    This is an action for damages that are within the jurisdiction of this court.

384.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

---

[21] *Rogers v. Cisco Sys., Inc.*, 268 F.Supp.2d 1305, 1312 (N.D. Fla. 2003)

385.    At all times relevant hereto, Defendant, RICKETTS, was, and upon information and belief, currently still is the Vice President of Sales for Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS.

386.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, solicitated new potential members, including Plaintiffs, to purchase a "Top Gun" Membership.

387.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiffs that that all funds obtained for the "Top Gun" Membership were to be held in an escrow account established on behalf of "N111VR LLC" and "1037W LLC" and were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning two specified Piaggio P. 180 Avanti Aircrafts,  SN 1006, FAA Registration No. N111VR (the "*N111VR-Aircraft*") and SN 1037, FAA Registration No. N1037W (the "1037W-*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiffs and other "N111VR LLC" and "1037W LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

388.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiffs with the purpose and

expectation that the representations would be relied upon by Plaintiffs and would induce Plaintiffs to purchase membership units for the "Top Gun" Membership and enter into the AeroVanti Membership Agreement, respectively.

389.    Plaintiffs, in justifiable reliance upon the representations made by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, agreed to each purchase one (1) membership unit for the "Top Gun" Membership, and five (5) membership units in total, and each enter into the AeroVanti Membership Agreement, respectively.

390.    The representations made to Plaintiffs by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiffs.

391.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, knew or should have known that these representations were false and fraudulent when they were made to Plaintiffs, as the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, having induced Plaintiffs to enter into the AeroVanti Top Gun Agreements, respectively.

392.    The false and fraudulent representations made by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, were material to Plaintiffs' decision one (1) membership unit for the "Top Gun" Membership, and five (5) membership units in total, and enter into the AeroVanti Membership Agreement, respectively.

393.    If Plaintiffs had known that the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, to Plaintiffs, then Plaintiffs would not have each paid one hundred fifty thousand dollars ($150,000.00) to each purchase one (1) membership unit for the "Top Gun" Membership, for a total amount of seven hundred fifty thousand dollars ($750,000.00) nor enter into the AeroVanti Membership Agreement, respectively.

394.    Moreover, Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, represented to potential new members, including Plaintiff, that Defendant, AEROVANTI, had a significant "fleet" of aircrafts to satisfy member demand and further an in effort to "keep Defendant, AEROVANTI's

member-to-aircraft ratio lower than the industry average without sacrificing any of the luxury one expects with private travel".

395.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiffs with the purpose and expectation that the representations would be relied upon by Plaintiffs and would induce Plaintiff to each purchase one (1) membership unit, five (5) membership units in total,  for the "Top Gun" Membership and enter into the AeroVanti Membership Agreement, respectively.

396.    Plaintiffs, in justifiable reliance upon the representations made by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, agreed to each purchase one (1) membership unit, five (5) membership units in total, for the "Top Gun" Membership, and further enter into the AeroVanti Membership Agreement, respectively.

397.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, knew or should have known that these representations were false and fraudulent when they were made to Plaintiff, as Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, did not have more than three (3) aircrafts in its fleet and that were deemed to be airworthy, prior to Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant,

AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, having induced Plaintiffs to enter into the AeroVanti Top Gun Agreement, respectively.

398.    The false and fraudulent representations made by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, were material to Plaintiffs' decision to each purchase one (1) membership unit, five (5) membership units in total, for the "Top Gun" Membership and further enter into the AeroVanti Membership Agreement, respectively.

399.    If Plaintiffs had known that known that Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, only had three (3) aircrafts in its fleet and that were deemed to be airworthy, as was represented by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, to Plaintiffs, then Plaintiffs would not have each paid one hundred fifty thousand dollars ($150,000.00) to each purchase one (1) membership unit for the "Top Gun" Membership, for a total amount of seven hundred fifty thousand dollars ($750,000.00), nor enter into the AeroVanti Membership Agreement, respectively.

400.    As a direct and proximate result of the false and fraudulent representations made to Plaintiffs by Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, Plaintiffs have suffered damages, and continue to suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, RICKETTS, for damages, costs, interest, prejudgment interest, and such other relief as the Court deems proper.

## COUNT XIX - NEGLIGENT MISREPRESENTATION[22]
### (PLAINTIFFS against DE POL)

Plaintiffs, sues Defendant, DE POL, and allege that:

401.    This is an action for damages that are within the jurisdiction of this court.

402.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

403.    At all times relevant hereto, Defendant, DE POL, was the Chief Operating Officer for Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS.

404.    Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, controlled and/or managed the solicitation of new potential members, including Plaintiffs, to purchase a "Top Gun" Membership.

405.    Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiffs that that all funds obtained for the "Top

---

[22] *Rogers v. Cisco Sys., Inc.*, 268 F.Supp.2d 1305, 1312 (N.D. Fla. 2003)

Gun" Membership were to be held in an escrow account established on behalf of "N111VR LLC" and "1037W LLC" were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning two specified Piaggio P. 180 Avanti Aircrafts, SN 1006, FAA Registration No. N111VR (the "N111VR-*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiffs and other "N111VR LLC" and "1037W LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

406.    Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiffs with the purpose and expectation that the representations would be relied upon by Plaintiffs and would induce Plaintiffs to purchase membership units for the "Top Gun" Membership and enter into the AeroVanti Membership Agreement, respectively.

407.    Plaintiffs, in justifiable reliance upon the representations made by Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, agreed to each purchase one (1) membership unit for the "Top Gun" Membership, and five (5) membership units in total, and each enter into the AeroVanti Membership Agreement, respectively.

408.    The representations made to Plaintiffs by Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiffs.

409.    Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, knew or should have known that these representations were false and fraudulent when they were made to Plaintiffs, as the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, having induced Plaintiffs to enter into the AeroVanti Top Gun Agreements, respectively.

410.    The false and fraudulent representations made by Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, were material to Plaintiffs' decision one (1) membership unit for the "Top Gun" Membership, and five (5) membership units in total, and enter into the AeroVanti Membership Agreement, respectively.

411.    If  Plaintiffs had known that the Aircraft Lease Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited

purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, to Plaintiffs, then Plaintiffs would not have each paid one hundred fifty thousand dollars ($150,000.00) to each purchase one (1) membership unit for the "Top Gun" Membership, for a total amount of seven hundred fifty thousand dollars ($750,000.00) nor enter into the AeroVanti Membership Agreement, respectively.

412.   Moreover, Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, represented to potential new members, including Plaintiff, that Defendant, AEROVANTI, had a significant "fleet" of aircrafts to satisfy member demand and further an in effort to "keep Defendant, AEROVANTI's  member-to-aircraft ratio lower than the industry average without sacrificing any of the luxury one expects with private travel".

413.   Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiffs with the purpose and expectation that the representations would be relied upon by Plaintiffs and would induce Plaintiff to each purchase one (1) membership unit, five (5) membership units in total,  for the "Top Gun" Membership and enter into the AeroVanti Membership Agreement, respectively.

414.    Plaintiffs, in justifiable reliance upon the representations made by Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, agreed to each purchase one (1) membership unit, five (5) membership units in total, for the "Top Gun" Membership, and further enter into the AeroVanti Membership Agreement, respectively.

415.    Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, knew or should have known that these representations were false and fraudulent when they were made to Plaintiff, as Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, did not have more than three (3) aircrafts in its fleet and that were deemed to be airworthy, prior to Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, having induced Plaintiffs to enter into the AeroVanti Top Gun Agreement, respectively.

416.    The false and fraudulent representations made by Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, were material to Plaintiffs' decision to each purchase one (1) membership unit, five (5) membership units in total, for the "Top Gun" Membership and further enter into the AeroVanti Membership Agreement, respectively.

417.    If  Plaintiffs had known that known that Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, only had three (3) aircrafts in its fleet and that were deemed to be airworthy, as was represented by Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, to Plaintiffs, then Plaintiffs would not have each paid one hundred fifty thousand dollars ($150,000.00) to each purchase one (1) membership unit for the "Top Gun" Membership, for a total amount of seven hundred fifty thousand dollars ($750,000.00), nor enter into the AeroVanti Membership Agreement, respectively.

418.    As a direct and proximate result of the false and fraudulent representations made to Plaintiffs by Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, Plaintiffs have suffered damages, and continue to suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, DE POL, for damages, costs, interest, prejudgment interest, and such other relief as the Court deems proper.


## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a jury trial as to all issues so triable.

By:    **/s/ Ryan C. Wagner**       

Ryan C. Wagner, Esq.
Florida Bar No. 109313
**WLG FIRM, PLLC**
Attorneys for Plaintiffs
110 SE 6th Street, Suite 1700
Fort Lauderdale, FL 33301
Tel: (954) 271-2424
Email: ryan@WLGFIRM.com

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]*

*[SIGNATURE PAGE(S) AND EXHIBIT(S)
TO IMMEDIATELY FOLLOW]*

## **VERIFICATION OF COMPLAINT**

I, STEPHAN GRATZIANI, am a resident of the State of Florida, and am a Co-Plaintiff in the above captioned action. I have read the foregoing Verified Complaint and pursuant to 28 U.S.C.§ 1746(2) declare under penalty of perjury that the foregoing factual averments are true and correct to the best of my knowledge and belief.

By: _____

Stephan Gratziani, as *Co-Plaintiff*


State of FLORIDA     )
County of PALM BEACH )


I HEREBY CERTIFY that on this day, before me, an officer duly qualified to take acknowledgments, personally appeared STEPHAN GRATZIANI, and who is personally known to me. WITNESS my hand and official seal in the County and State last aforesaid this May 15, 2023.


Ryan C. Wagner

Name of Notary Public                 Signature of Notary Public


My Commission Expires:



Notary Public State of Florida
Ryan C Wagner
My Commission GG 915046
Expires 09/19/2023

## VERIFICATION OF COMPLAINT

I, JORGE LUIS DE LA CONCEPCION, am a resident of the State of Florida, and am a Co-Plaintiff in the above captioned action. I have read the foregoing Verified Complaint and pursuant to 28 U.S.C.§ 1746(2) declare under penalty of perjury that the foregoing factual averments are true and correct to the best of my knowledge and belief.

By: _____

Jorge Luis De La Concepcion, as *Co-Plaintiff*

State of FLORIDA         )
County of MIAMI-DADE )

I HEREBY CERTIFY that on this day, before me, an officer duly qualified to take acknowledgments, personally appeared JORGE LUIS DE LA CONCEPCION, and who is personally known to me. WITNESS my hand and official seal in the County and State last aforesaid this May 15, 2023.

Name of Notary Public

Signature of Notary Public

My Commission Expires:



Notary Public State of Florida
Ryan C Wagner
My Commission GG 915046
Expires 08/19/2023

## VERIFICATION OF COMPLAINT

I, ALAN RODRIGUEZ, am a resident of the State of Florida, and am a Co-Plaintiff in the above captioned action. I have read the foregoing Verified Complaint and pursuant to 28 U.S.C.§ 1746(2) declare under penalty of perjury that the foregoing factual averments are true and correct to the best of my knowledge and belief.

By: _____

Alan Rodriguez, as *Co-Plaintiff*

State of FLORIDA          )
County of MIAMI-DADE )

I HEREBY CERTIFY that on this day, before me, an officer duly qualified to take acknowledgments, personally appeared ALAN RODRIGUEZ, and who is personally known to me. WITNESS my hand and official seal in the County and State last aforesaid this May 15, 2023.

Ryan C. Wagner
Name of Notary Public

Signature of Notary Public

My Commission Expires:



Notary Public State of Florida
Ryan C Wagner
My Commission GG 915046
Expires 09/19/2023

122

## VERIFICATION OF COMPLAINT

I, MARK LACHANCE, am a resident of the State of Florida, and am acting in my corporate capacity as an authorized representative of WISHBONE MEDIA, LLC, a Co-Plaintiff in the above captioned action. I have read the foregoing Verified Complaint and pursuant to 28 U.S.C.§ 1746(2) declare under penalty of perjury that the foregoing factual averments are true and correct to the best of my knowledge and belief.

By: _____

Mark Lachance, as authorized representative of Wishbone Media, LLC, as *Co-Plaintiff*

State of FLORIDA        )
County of BROWARD       )

I HEREBY CERTIFY that on this day, before me, an officer duly qualified to take acknowledgments, personally appeared MARK LACHANCE, who hereby certifies that he is acting in his corporate capacity as an authorized representative of WISHBONE MEDIA, LLC, and who is authorized to execute and deliver this Verification of Complaint on behalf of WISHBONE MEDIA, LLC, and who is personally known to me. WITNESS my hand and official seal in the County and State last aforesaid this May 15, 2023.

Ryan C. Wagner
Name of Notary Public

Signature of Notary Public

My Commission Expires:



Notary Public State of Florida
Ryan C Wagner
My Commission GG 915046
Expires 09/19/2023